# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

MICHAEL S. OWL FEATHER GORBEY     *

Petitioner     *

v     *     Civil Action No. RDB-19-715

WARDEN FCI CUMBERLAND     *

Respondent     *

                     ***

## **MEMORANDUM OPINION**

The above-entitled case was initiated upon receipt of pleadings from Petitioner seeking a permanent injunction against the Federal Bureau of Prisons' ("BOP") use of drug field tests on suspected controlled dangerous substances in connection with prison disciplinary proceedings. ECF 1, 3. Petitioner moves for leave to proceed in forma pauperis. ECF 2. Because information contained in the petition clearly indicates that it is subject to dismissal, Petitioner's motion for leave to proceed in forma pauperis shall be denied.[1]

Petitioner alleges that the field tests utilized by the BOP have been widely rejected as evidence in criminal prosecutions because they are well known to render false positive results on known, legal products such as household cleaners. Notwithstanding that history and the number of times these test results have been rejected as unreliable, Petitioner states that the BOP continues to use the tests and does not make an allowance for the tested material to be preserved in the event

---

[1] Petitioner has accumulated more than three "strikes" during his term of incarceration. *See Gorbey v. U.S.A., et al.*, Civ. Action 1:08cv332 (D. Md. 2008), *Gorbey v. U.S. Military, et al.*, Civ. Action 1:08cv334 (D. Md. 2008), *Gorbey v. U.S. Military, et al.*, Civ. Action 1:08cv339 (D. Md. 2008), *Gorbey v. U.S.A., et al.*, Civil Action 2:09cv313 (S.D. W.Va. 2009), *Gorbey v. U.S.A., et al.*, 1:09cv262 (D. D.C. 2009), *Gorbey v. U.S.A., et al.*, Civil Action 2:08cv121 (N.D. W.Va. 2008), *Gorbey v. U.S.A., et al.*, Civil Action 1:08cv649 (D. D.C. 2008), *Gorbey v. U.S.A., et al.*, Civil Action 1:08cv650 (D. D.C. 2008), *Gorbey v. District of Columbia, et al.*, Civil Action 1:09cv261 (D. D.C. 2009), *Gorbey v. District of Columbia*, Civil Action 1:10cv1751 (D. D.C. 2010), *Gorbey v. State of Virginia, et al.*, Civil Action 2:11cv164 (E.D. Va. 2011).

an inmate charged with drug possession may subject it to more reliable testing procedures. ECF 1 at pp. 2-5, *see also* ECF 3-1 at p. 2.

With regard to the effects of this practice on Petitioner, he states that on January 10, 2019, he was charged with a Rule 113 possession of K2 and drug paraphernalia. He claims that no laboratory tests were conducted on the alleged K2, only a field test; and also claims the alleged drug paraphernalia was not subjected to any tests. ECF 1 at p. 5; ECF 3-1 at pp. 2-3. Petitioner was immediately placed on administrative segregation pending investigation. He states all investigations were complete as of January 11, 2019. ECF 1 at p. 6; ECF 3 at p. 3. He alleges the investigating officer who conducted the field test, Lt. Eirich, was significantly involved in the incident and violated "P5.5270.09 §541.5(b)" which prohibits the reporting officer from being the investigating officer. ECF 1 at p. 6; ECF 3-1 at p. 5.

Petitioner takes issue with his immediate assignment to administrative segregation, stating that inmates who receive positive urine tests for drug use, or who are charged with possession of suboxone, are not subject to administrative detention and the test results are subject to laboratory verification tests. ECF 1 at p. 7; ECF 3-1 at p. 7. Petitioner further complains that he was scheduled for a disciplinary hearing for the January 10, 2019 charges against him, but his request for a staff representative at the hearing could not be accommodated and the hearing was postponed. ECF 1 at p. 10; ECF 3-1 at p. 7. He claims that the delays in providing disciplinary hearings to inmates at FCI-Cumberland where he is currently incarcerated are unreasonable and constitute a concerted effort by BOP staff to discourage or vitiate an inmate's request for a staff representative. ECF 1 at pp. 11, 13-14; ECF 3-1 at pp. 7-8. Finally, Petitioner alleges that there has been an inordinate delay in providing him with a hearing on the disciplinary charges against him and, even when a hearing is ultimately provided, there are typically long delays before a written decision is

issued. ECF 1 at pp. 12-13, 14-15. Prior to the written decision from the hearing officer, Petitioner is not permitted to seek a remedy through the administrative remedy process which he claims results in his unjustified and lengthy detention in administrative segregation. *Id.* at pp. 12-13.

Petitioner alleges that the practices described amount to a violation of his due process and equal protection rights (ECF 1 at pp. 17-18) and requires this Court to deem the disciplinary process at FCI Cumberland unconstitutional (ECF 3-1 at p. 9). He seeks an injunction against the BOP requiring positive drug field test results to be verified by an independent lab in all cases of suspected drug possession by inmates at FCI-Cumberland; and prohibiting "point manipulations or transfers" pending exhaustion of available administrative remedies. ECF 1 at pp. 17-18. He further asks this Court to order the BOP to: afford equal protection and due process protections to those inmates charged with possession of K2 or paraphernalia; cease the use of "unjust administrative detention to deter requests for staff [representatives and] witnesses or evidence;" expunge the incident report issued to him or to vacate the report with prejudice. ECF 3-1 at p. 9.

Petitioner seemingly invites this Court to weigh-in on the validity of pending disciplinary charges against him before it has been determined whether he is guilty of those charges, or he is exonerated based on the arguments raised here. Construed as a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, or a civil action seeking injunctive relief, exhaustion of available administrative remedies is required. At a minimum this requires that a disciplinary hearing is held and a record is developed regarding the circumstances of the charges against Petitioner and the evidence relied upon to reach the decision.

In prison disciplinary proceedings where an inmate faces the possible loss of diminution credits, he is entitled to certain due process protections. These include: (1) advance written notice of the charges against him; (2) a written statement of the evidence relied on and the reasons for

3

taking any disciplinary action; (3) a hearing where he is afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision; (4) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decision-maker. *See Wolff v. McDonnell*, 418 U.S. 539, 592 (1974). There is no constitutional right to confront and cross-examine witnesses or to retain and be appointed counsel. *See Baxter v. Palmigiano*, 425 U.S. 308, 322 (1976); *Brown v. Braxton*, 373 F.3d 501, 504-05 (4th Cir. 2004). As long as the hearing officer's decision contains a written statement of the evidence relied upon, due process is satisfied. *See Baxter*, 425 U.S. at 322, n.5. Moreover, substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985). Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact. *See Kelly v. Cooper*, 502 F. Supp. 1371, 1376 (E.D. Va. 1980). The findings will only be disturbed when unsupported by any evidence, or when wholly arbitrary and capricious. *See Hill*, 472 U.S. at 456; *see also Baker v. Lyles*, 904 F.2d 925, 933 (4th Cir. 1990). As long as there is some evidence in the record to support a disciplinary committee's factual findings, a federal court will not review their accuracy.

Notably, the protections outlined in *Wolff* pertain to the loss of diminution of confinement credits as that loss implicates a liberty interest. Here, the alleged harm is Petitioner's assignment to administrative segregation pending a hearing. Assignment to administrative segregation does not create an atypical and significant hardship. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983) (holding that administrative segregation is part of the ordinary incidents of prison life). More recently the Supreme Court found that conditions in a super-maximum prison where human contact and communication between cells was forbidden and exercise was limited to one hour a

day in a small indoor room were not enough alone to implicate liberty interest. Rather the duration of the confinement to the prison enforcing those conditions created a liberty interest in avoiding a transfer there. See *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005). The *Wilkinson* prisoners received only annual reviews and "even inmates with exemplary behavior rarely progress[ed] through [the prison] in less than two years." *Austin v. Wilkinson*, 189 F. Supp. 2d 719, 740 (N.D. Ohio 2002). Petitioner has not alleged facts regarding his assignment to administrative segregation that would lead to any reasonable conclusion that he has been subjected to atypical and significant hardship. "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." *Meachum v. Fano*, 427 U.S. 215, 224 (1976); see also *Sandin v. Conner*, 515 U.S. 472, n.2 (1995) (requiring an atypical and significant hardship as prerequisite to creation of a constitutionally protected liberty interest). A liberty interest is created by the imposition of an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U. S. at 484. Petitioner has not alleged a deprivation of a liberty interest.

With regard to Petitioner's allegation that drug field tests are not subjected to laboratory verification, he has not demonstrated an actual injury. This court has no jurisdiction to intervene in a matter where there is no case or controversy. See U.S. Const. Art. III, § 2, cl. 1. A claim is justiciable if there is "a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract." *Babbitt v. United Farm Workers Nat'l' Union*, 442 U.S. 289, 298 (1979). Until Petitioner has been found guilty and has demonstrated an infringement of a protected liberty interest, he has not suffered an actual injury.

5

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U. S.C. § 2253(c)(2); *see Buck v. Davis*, 137 S.Ct. 759, 773 (February 22, 2017). The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (citation and internal quotation marks omitted), or that "the issues presented are adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Because this Court finds that there has been no substantial showing of the denial of a constitutional right, a certificate of appealability shall be denied. *See* 28 U. S.C.§ 2253(c)(2). Petitioner may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003) (considering whether to grant a certificate of appealability after the district court declined to issue one).

By separate Order which follows, the complaint shall be dismissed and the Motion to Proceed in Forma Pauperis shall be denied.

APRIL 4, 2019
Date

*[signature]*
RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE